444 So.2d 625 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Kenneth GUIN, Defendant-Appellant.
No. CR83-133.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
*627 Richard V. Burnes, Alexandria, for defendant-appellant.
Leonard K. Knapp, Jr., Dist. Atty., and Robert R. Bryant, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before GUIDRY, CUTRER and DOUCET, JJ.
DOUCET, Judge.
On November 17, 1982, the defendant, Kenneth Guin, was convicted by a twelveperson jury of attempted second degree murder, in violation of LSA-R.S. 14:27 and 14:30.1, and aggravated rape, in violation of LSA-R.S. 14:42. On December 9, 1982, he was sentenced to serve fifty (50) years at hard labor for the attempted second degree murder conviction, and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence for the aggravated rape conviction. Defendant appeals.
Ms. Barbara Joe Jacob, a 20 year old single girl, shared an apartment with her brother in Westlake, La. The defendant, Kenneth Guin, known to most of his friends as "Bear", was co-worker of Ms. Jacob. He also happened to live nearby her apartment in Westlake. As a payroll clerk for the company, Ms. Jacob was acquainted with the defendant, "Bear". She testified that she had hired him into the company[1] and saw him two to three times a week. She admitted that on numerous occasions he had asked her for a date, but she had always turned him down.
On or about April 16, 1982, Ms. Jacob was at her apartment, when, at about 2:00 P.M., the defendant came by. He asked the victim if she would take him to a nearby *628 location in Moss Bluff so that he could pick up his car. At first Ms. Jacob was hesitant, as she had plans for the afternoon, but the defendant persisted and she agreed.
After entering the Moss Bluff area, the defendant directed Ms. Jacob to turn down a dirt road. After traveling along this road for a short distance, the defendant pulled out a knife and forced the car into the roadside ditch. He then reached over and dragged the victim, by the hair, across the console and out the passenger side of the vehicle. While staying close behind, the defendant ordered her to walk into the wooded area, occasionally shoving her on the back. Upon entering a secluded area where the grass and weeds were matted down, the defendant stripped the victim of all her clothing, took off his shirt and pushed her on the ground. The victim, now naked and laying on the defendant's shirt, was sexually abused and raped[2] by the defendant. After the sexual act, the defendant strangled the victim into unconsciousness. When she regained consciousness, the defendant was not around. Ms. Jacob's neck was severely lacerated with twenty (20) to thirty (30) cuts across the throat. Naked and bleeding, the victim found her way to the roadway and was discovered by a deputy sheriff. The police, based upon the description and name given by the victim, subsequently arrested the defendant, Kenneth Guin.
The Grand Jury of Calcasieu Parish returned a two count indictment against the defendant charging him with the crimes of aggravated rape in violation of LSA-R.S. 14:42[3] and attempted second degree murder in violation of LSA-R.S. 14:27[4] and *629 14:30.1[5]. The defendant was found guilty on November 17, 1982, on both counts charged in the indictment. On December 9, 1982, the defendant was sentenced to life in prison without benefit of probation, parole or suspension of sentence for the aggravated rape conviction. He was sentenced to fifty (50) years at hard labor on the attempted second degree murder conviction. Sentences were to run concurrently. It is from these convictions the defendant has, upon this appeal, perfected eleven (11) assignments of error.[6]
ASSIGNMENTS OF ERROR
1. The trial court erred in permitting the State to amend the grand jury indictment, over the objection of the defendant, so as to change offenses charged by amending the date from March 16, 1982, to April 16, 1982.
2. The trial court erred in examining prospective jurors as to their general qualifications out of the presence of the defendant and over his objection.
3. The trial court erred in conducting a voir dire examination of the prospective jurors in private bench conference prior to the defendant having been brought into the courtroom and out of the hearing of counsel.
4. The trial court erred in failing to require the sheriff to account for service or attempted service on absent and unexcused petit jury veniremen.
5. The trial court erred in denying defendant's request for attachment of absent and unexcused petit jury veniremen as required by LSA-C.Cr.P. art. 783.
11. The trial court erred in overruling the defendant's motion for a mistrial.
14. The trial court erred in permitting a hearsay statement that the alleged victim identified the defendant's clothing.
16. The trial court erred in permitting the prosecutor and a State witness to improperly identify physical evidence so as to give an impression as to where it was located.
17. The trial court erred in refusing the defendant's motion for mistrial on the ground that the court had made a comment on the evidence.
18. The trial court erred in overruling the defendant's objection to the inclusion of the words "or to inflict great bodily harm" in the charge which the court gave defining attempted second degree murder.
19. The trial court erred in refusing to charge the jury that a unanimous verdict is required to convict the defendant.
ASSIGNMENT OF ERROR NO. 1
The defendant argues that the trial court erred by allowing the State to amend the grand jury indictment as to the date of the offenses charged. The original indictment mistakenly indicated the offenses occurred on March 16, 1982, where it should have read that the offenses occurred on or about April 16, 1982, as it was amended.[7]
On November 9, 1982, before Judge L.E. Hawsey, Jr., the State moved to amend the indictment, as to the date the alleged offenses were committed, from March 16, 1982, to April 16, 1982. Counsel for the *630 defendant argued that the amendment was improper and the court denied the amendment. On November 12, 1982, the State was allowed to argue in favor of the amendment on a rehearing. Based on the arguments heard from both the State and the defendant, the court ruled to allow the amendment showing the date of April 16, 1982, as the date of the occurrence of the alleged offenses.
It is clear that the district attorney has the power and authority to amend grand jury indictments, both as to amendments of form and as to amendments of substance. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Bluain, 315 So.2d 749 (La.1975). This power is controlled by LSA-C.Cr.P. art. 487.[8] This article indicates that an amendment as to form may be done at any time and that an amendment as to substance is proper if done prior to commencement of trial. Based on this statutory authority and the facts of this instance, it makes no difference whether the amendment was as to form or substance, since both would be considered timely and properly amended under article 487.
In any event, the date and time of the commission of an offense need not be alleged in the indictment, unless the date or time is essential to the offense. (See LSA-C.Cr.P. art. 468).[9] A mistake respecting the date on which an offense occurred has been held to be a defect of form when not essential to the offense. State v. Lawson, 393 So.2d 1260 (La.1981); State v. Dye, 384 So.2d 420 (La.1980); State v. Drew, 360 So.2d 500 (La.1978). The dates are not essential to the offenses charged here. Therefore, based on LSA-C.Cr.P. art. 487, supra, the amendment could have been made at any time. The defendant's assignment of error No. 1 is without merit.
ASSIGNMENT OF ERROR NOS. 2 AND 3
Both of these assignments concern the trial court's examination of prospective jurors and can be dealt with together.
On the morning of November 15, 1982, court was convened with Judge W. Ellis Bond presiding. Roll was called to determine which of the petit jury veniremen were present and which were absent. Prior to the State calling a particular case, the judge informed the members of the venire of their purpose and the basic qualifications they must have.[10] He then informed *631 them that there are certain instances where a hardship may warrant the excusing of a member of the venire from jury service. Those members of the venire not qualified to be jurors or those having a hardship were requested to approach the bench, one at a time, so that the judge could evaluate their situation. Defense counsel then objected and argued that the defendant should be present when the judge is considering excusing potential jurors. The defendant bases his argument on LSA-C. Cr.P. art. 831[11] which states in pertinent part:
A defendant charged with a felony shall be present:
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror.
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced.
However, the Louisiana Supreme Court has stated on numerous occasions that the trial court is authorized to excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case. LSA-C.Cr.P. art. 783[12]State v. Brown, 414 So.2d 726 (La. 1982). A defendant need not be present when the trial judge excuses prospective jurors before his case is called for trial. State v. Lowdins, 412 So.2d 1349 (La.1982); State v. Meriwether, 412 So.2d 558 (La. 1982); State v. Cass[*], 356 So.2d 936 (La. 1977); State v. Sheppard, 350 So.2d 615 (La.1977); State v. Williams, 258 La. 801, 248 So.2d 295 (1971). A juror is not "called" or "examined" within the meaning of LSA-C.Cr.P. art. 831(3) until he is called for examination in the trial of that particular defendant. The defendant need not be present when the trial judge excuses prospective jurors before his own case is called for trial. Lowdins supra; Meriwether, supra; Williams, supra; State v. McGuire, 254 La. 560, 225 So.2d 215 (1969).
In this case, the roll was called for the jurors and they were afforded the opportunity to submit special reasons for being excused. In accordance with the aforementioned jurisprudence, the trial court *632 acted properly. The potential jurors were not yet sworn to a particular case and, therefore, could be excused from the petit jury venire by the trial court at anytime prior to such swearing. Accordingly, assignments Nos. 2 and 3 are without merit.
ASSIGNMENTS OF ERROR NOS. 4 AND 5
In these assignments the defendant argues that the trial court erred by failing to account for, and attach, the absent and unexcused petit jury veniremen.
On the issue of requiring the sheriff to account for service or attempted service, the judge gave an explanation to defense counsel as to why petit jury veniremen were absent. Also, as indicated in the trial court's minutes, there was an accounting by the sheriff of who was and who was not served.
In addressing whether or not the trial court erred in denying the defendant's request for attachment of the absent and unexcused petit jury veniremen, one should note the controlling language of LSA-C. Cr.P. art. 783, supra. The article indicates that the court may order an attachment of absent and unexcused petit jury veniremen, thus the decision is left to the discretion of the trial court. The jurisprudence construing article 783 is well established that the defendant in a criminal trial has no right to demand attachment of absent jurors when a sufficient number to form a panel is present. State v. Morgan, 315 So.2d 632 (La.1975); State v. Witherspoon, 292 So.2d 499 (La.1974); State v. Jugger, 217 La. 687, 47 So.2d 46 (1950). There were sufficient persons to form the jury panel in this case. The defendant has failed to allege or show any evidence of material prejudice resulting from the failure to attach the absent veniremen. Assignments Nos. 4 and 5 are without merit.
ASSIGNMENT OF ERROR NO. 11
In this assignment the defendant argues that the State posed a "leading question" to the victim. The nature of the question was such that it referred to one of the critical elements necessary for any rape conviction, that being "penetration". The defendant feels a mistrial should have been granted based on the following colloquy:
Q: Then what happened?
A: And, then he startedHe putHe took his fingers and he was pushing his penis into me.
Q: Had he taken his clothes off at any time?
A: Well, the only time he took off was when he took off his shirt. But, I had heard his pants unzip when I was on the ground.
Q: And, he penetrated you at this time?
A: Yes, he did.[13]
The trial court sustained the objection and asked that the assistant district attorney rephrase his question.
A leading question is one which suggests to the witness the answer they are to deliver; ordinarily, such questions are prohibited when posed to one's own witness unless the witness is hostile or unwilling. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Carthan, 377 So.2d 308 (La.1979).
In this instance the question does appear to be leading. However, as pointed out by the State, it merely restates what the witness' earlier testimony had been. Though it may not have been proper, it certainly was not grounds for a mistrial. LSA-C. Cr.P. art. 775[14] provides in part:

*633 A mistrial may be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by article 770[15] or 771[16].
A mistrial is a drastic remedy and except in instances in which it is mandatory, is only warranted if substantial prejudice results which would deprive the defendant of a fair trial. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tribbet, 415 So.2d 182 (La.1982). The determination of prejudice lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Tribbet, supra; State v. Douglas, 389 So.2d 1263 (La.1980).
Leading questions are not the type of prosecutorial error which diminish the reliability of a jury's verdict. Ms. Jacob's testimony, as well as the medical evidence and testimony, clearly show sexual penetration. Only when there is clear abuse of discretion which prejudices defendant's rights will a conviction be reversed because of leading questions. State v. Felde, 422 So.2d 370 (La.1982); State v. Vanderhoff, 415 So.2d 190 (La.1982). The defendant has failed to show any prejudicial effect the statement had on his defense. Although counsel should not be permitted to mold the witness' testimony, a verdict should not be reversed in the absence of a clear abuse calculated to prejudice the accused's rights. State v. Jackson, 419 So.2d 425 (La.1982); State v. Swift, 363 So.2d 499 (La.1978). This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 14
In this assignment the defendant argues that a hearsay statement was improperly allowed into evidence. During the course of the prosecution's case Deputy Sheriff Babin was questioned as follows:
Q: Now, were you involved any further in this particular case, sir, after that particular date?

*634 A: Yes, sir.
Q: How so?
A: The victim, after her stay in the hospital, she was asked to come to our office. We showed her the clothing which you just showed me which she I.D.'d...
The defendant objected, arguing that the statement was hearsay. The trial judge overruled the objection, however, the record reveals that Deputy Babin did not affirmatively testify as to the identification after the objection was interposed.
Generally, hearsay is defined as an out-of-court statement introduced to prove the truth of its content. State v. Chaney and State v. Herman, 423 So.2d 1092 (La.1982); State v. Spell, 399 So.2d 551 (La.1981). LSA-R.S. 15:434 states the general rule that hearsay evidence is inadmissible. However, it is recognized that when inadmissible hearsay is improperly introduced at trial, which is merely cumulative of other properly introduced testimony, it is harmless error. State v. Parker, 425 So.2d 683 (La.1982); State v. Vanderhoff, supra; State v. Spell, supra.
The victim, Ms. Jacob, had previously identified every article of clothing referred to by the deputy in his statement. It is clear that the statement was merely cumulative in showing that the victim recognized certain articles worn by the defendant. There was no prejudice to the defendant.
ASSIGNMENT OF ERROR NO. 16
The defendant objected to the State's questioning of an expert witness as to the markings on an envelope located in the sex kit submitted to the expert for analysis. The envelope in question contained a hair of human origin recovered from the cervix of the victim and was so marked on the envelope.
The defendant argues that the testimony sought was not within the personal knowledge of the witness and not within his expertise. The court overruled the objection, however, the response concerning the markings, as indicated on the envelope, was never made. Without responding to what was marked on the envelope there is no alleged error to analyze. This assignment has no merit.
ASSIGNMENT OF ERROR NO. 17
During the prosecutor's direct examination of an expert witness an objection was made as to his testifying on matters not within his personal knowledge. This is the subject of assignment of error No. 16, supra. During the course of the objection, the following colloquy occurred:
Q: All I want to know is where this particular item came from, not any opinions of yours?
A: The envelope was labeled hair...
MR. BURNES: ... Excuse me, Your Honor. Your Honor, that's the objection that I made. I don't have any objection to this man's expertise. I stipulated to it. I know him. I've examined him in cases before. But, he's not testifying now identifying the object. He's trying to say what someone else observed about the object. Not what he observed, but what someone else wrote on the ..
THE COURT: ... With the testimony of the doctor in connection with the preparation of the crime kit...
MR. BURNES: ... I don't want to help...
THE COURT: ... He may...
MR. BURNES: ... the State try their case, Your Honor.
THE COURT: But, I must consider all prior testimony in connection with this objection also. I'll overrule the objection.
MR. BURNES: Your Honor, I'll respectfully object. And, I think that the statement Your Honor just made about the doctor's testimony constitutes a comment on the evidence in the presence of the jury. I respectfully object to it and I move for a mis-trial.
THE COURT: I don't think I commented on what the doctor testified to, Mr. Burnes. I attempted to carefully *635 refrain from doing so. Your motion is denied.
The defendant feels the trial court erred in denying his motion for a mistrial on the grounds that the court had made a comment on the evidence. The defendant feels that LSA-C.Cr.P. arts. 772 and 806[17] are applicable to the situation at hand. LSA-C.Cr.P. art. 772 prohibits any comment upon the evidence in the jury's presence; however, a ruling on the admissibility of evidence and the remarks by a trial judge giving reasons for his ruling on objections are not objectional as comments on the case unless such remarks are unfair or prejudicial. State v. Edwards, 420 So.2d 663 (La.1982); State v. Williams, 397 So.2d 1287 (La.1981); State v. Toomer, 395 So.2d 1320 (La.1981); State v. Quincy, 363 So.2d 647 (La.1978). The trial judge did not comment on, or recapitulate evidence, nor repeat testimony of a witness. Nor did he give an opinion of what had been proved, not proved, or refuted. The remarks were not comments on the evidence; however, even if they were, defendant has shown no unfairness or prejudice in these expressions. Assignment No. 17 is without merit.
ASSIGNMENT OF ERROR NO. 18
The defendant alleges the trial court erred in including in the jury charge the words "or to inflict great bodily harm" when defining attempted second degree murder. The pertinent part of the charge reads:
I will now instruct you on count one, attempted second degree murder. Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. An attempt is defined as follows: A person who has a specific intent to commit a crime and who does an act for the purpose of and tending directly toward accomplishing his object is guilty of an attempt to commit the crime intended.
There is no dispute that the words "or to inflict great bodily harm" is part of the second degree murder statute.[18] The charge here is that of attempted second degree murder and deals with the specific intent as defined in the attempt statute.[19] When the attempt statute is invoked and the charge is attempted second degree murder, it is required that the person have the specific intent to kill a human being. Having specific intent to inflict great bodily harm and then only inflicting great bodily harm cannot be construed as attempted second degree murder.
The defendant relies heavily on the case of State v. Butler, 322 So.2d 189 (La.1975) wherein the Louisiana Supreme Court reiterated that specific intent to kill is an essential element of attempted murder.
The State claims Butler is distinguishable on its facts. In Butler, the evidence the jury found credible proved an aggravated battery not an attempted murder. The evidence indicated that there was not a specific intent to kill. Also, in the closing arguments the prosecutor argued that the specific intent to inflict great bodily injury was sufficient for a conviction of attempted murder. The defendant was not permitted to argue in his closing arguments that a specific intent to kill was required to convict of attempted murder. While it is admitted that the inclusion of the term "or to inflict great bodily harm" was improper (and included at the State's request), the State contends the circumstances of the case do not require a reversal.
With reluctance, we are obliged to agree with argument of defense counsel. The reason for reservation is that the evidence is so overwhelming as to the specific intent *636 of the defendant to kill and his incarceration will not be affected by resolution of this issue. Nevertheless, the law is clear and well established that attempted murder requires specific intent to kill; specific intent to cause great bodily harm will not suffice. State v. Butler, supra; State v. Strother, 362 So.2d 508 (La.1978). In the present case, as in Butler, defense counsel objected to the charge as being improper, nevertheless, the improper instruction was maintained. According to Butler, the theory of harmless error can not permit affirmance of a conviction which results from such a substantial error of law. The reason for the aforesaid rule was set forth in Butler as follows:
Fundamental to American law are the principles here applicable. The state through its legislature has defined the conduct constituting particular offenses, with particular consequences (sentences). To secure conviction for any such offenses, the state through its prosecutors must charge the accused with a particular crime or crimes and prove the accused's guilt of the legislatively-defined crime(s) beyond a reasonable doubt. The jury with proper instructions of law is the exclusive arbiter of the innocence or guilt of the crime charged. The courts are constitutionally bound to assure that those accused before our courts are tried in accordance with law and to reverse, where substantial error of law is committed.
To suggest that no substantial error of law occurs, where the jury was in effect instructed that a person guilty of aggravated battery can be convicted of attempted murder although he has no specific intent to kill by the battery, is to suggest an untrammelled discretion of prosecutor, jury, and court to punish an accused for offensive conduct. To the contrary, the legislature has authorized prosecutions for particular crimes. In a government of law and of constitutionally and legislatively limited powers, neither prosecutor, jury, nor court are empowered to sustain a conviction for conduct not punishable by the crime for which the accused stands charged. 322 So.2d at 193-194.
That the defendant's incarceration will not be altered by adhering to Butler appears to be of no consequence insofar as our review is concerned. See: State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971). The defendant is entitled to attack the invalid conviction even though it is concurrent with or consecutive to a valid sentence for which defendant will remain confined inasmuch as, in the event of retrial, it is of great advantage to the prosecution and defense alike to marshall their respective cases while the evidence is fresh and the witnesses are available. id. See also: State ex rel. Becnel v. Blackburn, 410 So.2d 1015 (La.1982). The trial court's error in instructing the jury requires the defendant's conviction for this crime be reversed.
ASSIGNMENT OF ERROR NO. 19
The defendant argues that the trial court erred in charging the twelve-person jury that: "Ten of you must agree upon a verdict". The defendant feels that a nonunanimous verdict offends due process under the Fourteenth Amendment, and impairs the defendant's right to a "fair trial by jury" as is guaranteed by the Sixth and Fourteenth Amendments.
Article I, Section 17 of the Louisiana Constitution states in pertinent part that:
"... A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict..."
See, also LSA-C.Cr.P. art. 782.[20]
The United States Supreme Court in Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); and Johnson *637 v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), has upheld Louisiana's less than unanimous verdicts as provided in Louisiana Constitution art. I, § 17 and LSA-C.Cr.P. art. 772. Therefore, this assignment is without merit.
CONCLUSION
For the reasons assigned hereinabove, the defendant's aggravated rape conviction and sentence to life imprisonment without benefit of probation, parole or suspension of sentence is affirmed. His conviction for attempted second degree murder is reversed and the case is remanded for re-trial in accordance with law.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
*638
 APPENDIX I
State of Louisiana |
 }
 Parish of Calcasieu |
IN THE NAME AND BY THE AUTHORITY OF THE STATE OF LOUISIANA:
The Grand Jurors of the State of Louisiana, duly empaneled, sworn and charged to enquire within and for
the Parish of Calcasieu State of Louisiana, upon their oath do present
THAT KENNETH GUIN 
at the Parish of Calcasieu on the 16th day of "APRIL" Amended Nov.12, 1980
in the year of our Lord, One Thousand Nine Hundred and Eighty-two 
 COUNT ONE:
 KENNETH GUIN ATTEMPTED TO COMMIT SECOND DEGREE MURDER OF BARBARA JACOBS
 IN VIOLATION OF LSA R.S. 14:27 and 14:30.1.
 COUNT TWO:
 KENNETH GUIN COMMITTED AGGRAVATED RAPE UPON BARBARA JACOBS IN VIOLATION
 OF LSA R.S. 14:42.
contrary to the law of the State of Louisiana, in contempt of the authority of said State, and against the
peace and dignity of the same.
 asst District Attorney Fourteenth Judicial District of Louisiana.
NOTES
[1] As the payroll clerk, Ms. Jacob's duties included processing new employees through their introductory paper work.
[2] Rape is defined in LSA-R.S. 14:41 as follows:

Rape is the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person's lawful consent.
Emission is not necessary; and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
For the purposes of this Chapter, a person shall not be considered to be a spouse if a judgment of separation from bed and board has been rendered.
[3] LSA-R.S. 14:42 provides:

Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
(3) Where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; or
(4) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[4] LSA-R.S. 14:27 provides:

A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
D. Whoever attempts to commit any crime shall be punished as follows:
(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not more than fifty years;
(2) If the offense so attempted is theft or receiving stolen things, and is not punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both. If the offense so attempted is theft or receiving stolen things, and is punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned not more than one year, or both;
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
[5] LSA-R.S. 14:30.1 provides:

Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simply robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[6] Originally twenty-one (21) assignments of error were lodged with the Court. The defendant abandons ten assignments and argues the remaining eleven.
[7] A copy of the indictment is attached hereto for reference as Appendix No. I.
[8] LSA-C.Cr.P. art. 487 provides in its entirety:

A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.
Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance.
B. Nothing contained herein shall be construed to prohibit the defendant from entering a plea of guilty to a crime nonresponsive to the original indictment when such a plea is acceptable to the district attorney, and in such case, the district attorney shall not be required to file a new indictment to charge the crime to which the plea is offered.
[9] LSA-C.Cr.P. art. 468 provides in its entirety:

The date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense.
If the date or time is not essential to the offense, an indictment shall not be held insufficient if it does not state the proper date or time, or if it states the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day.
All allegations of the indictment and bill of particulars shall be considered as referring to the same date or time, unless otherwise stated.
[10] LSA-C.Cr.P. art. 401 sets forth the general qualifications of jurors as follows:

In order to qualify to serve as a juror, a person must:
(1) Be a citizen of the United States and of this state who has resided within the parish in which he is to serve as a juror for at least one year immediately preceding his jury service;
(2) Be at least eighteen years of age;
(3) Be able to read, write, and speak the English language;
(4) Not be under interdiction, or incapable of serving as a juror because of a mental or physical infirmity; and
(5) Not be under indictment for a felony, nor have been convicted of a felony for which he has not been pardoned.
[11] LSA-C.Cr.P. art. 831 provides in its entirety that:

A defendant charged with a felony shall be present:
(1) At arraignment;
(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made;
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced; and
(6) At the rendition of the verdict or judgment, unless he voluntarily absents himself.
[12] LSA-C.Cr.P. art. 783 provides in its entirety that:

A. The court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case. The panel shall be selected from the remaining members of the petit jury venire. The court, either on its own motion, or that of the state or a defendant, may order the attachment of an absent and unexcused petit jury venireman.
B. If jury service, whether criminal or civil, would result in undue hardship or extreme inconvenience, the district court may excuse a person from such service either prior to or after his selection for the general venire, jury pool, or jury wheel. The court may take such action on its own initiative or on recommendation of an official or employee designated by the court.
C. No person or group of persons shall be automatically excused.
D. In the event a person is excused because jury service would result in undue hardship or extreme inconvenience, the court may order that person's name be placed again in the general venire or in a central jury pool.
[*] Reversed on other grounds.
[13] The record, as transcribed, indicates on Page 192 that the victim did not respond to the district attorney's question but on Page 330, reiterating the same testimony, there is a response.
[14] LSA-C.Cr.P. art. 775 provides in its entirety that:

A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
[15] LSA-C.Cr.P. art. 770 provides in its entirety that:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
[16] LSA-C.Cr.P. art. 771 provides in its entirety that:

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
[17] LSA-C.Cr.P. art. 806 virtually tracks the language of article 772 and provides:

The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
[18] See LSA-R.S. 14:30.1, supra.
[19] See LSA-R.S. 14:27, supra.
[20] LSA-C.Cr.P. art. 782 is taken substantially from the constitutional source and tracks the language as follows:

A. Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.
B. Trial by jury may be knowingly and intelligently waived by the defendant except in capital cases.