643 So.2d 779 (1994)
STATE of Louisiana, Appellee,
v.
Archie HARRIS, Appellant.
Nos. 26563-KA, 26269-KA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1994.
*780 W. Charles Brown, Indigent Defender Bd., Mansfield, for appellant.
Richard Ieyoub, Atty. Gen., Don Burkett, Dist. Atty., Mansfield, for appellee.
Before VICTORY and BROWN, JJ., and JONES, J. Pro Tem.
BROWN, Judge.
A jury convicted defendant, Archie Harris, of attempted first degree murder. He was sentenced to 45 years at hard labor. Defendant's appeal in 1985 contended only that his sentence was excessive; however, a different panel of this court evaluated the sufficiency of the evidence and adjudged him guilty of attempted second degree murder. State v. Harris, 480 So.2d 943 (La.App.2d Cir.1985). On remand, defendant was resentenced to 45 years at hard labor.
Defendant filed an application for post-conviction relief (PCR), which was denied by the trial court in December 1992. This court agreed to review the trial court's denial of the PCR application. After fully considering the issues raised, we affirm the trial court's decision.

FACTUAL BACKGROUND
On the afternoon of October 3, 1984, the victim, Jackie Jackson, was walking from her grandmother's house in Joaquin, Texas, to her home in Longstreet, Louisiana. She accepted a ride from defendant, Archie Harris, with whom she was acquainted. Joseph Hunter, Jr., was a passenger in the car. The trio went to a baseball park in Logansport, Louisiana, where they indulged in the use of alcohol and marijuana. Defendant and Ms. Jackson drove away, leaving Hunter at the ball park.
Ms. Jackson testified that defendant demanded she give him a ring she was wearing. When she refused, he struck her several times and demanded that she have sex with him. Defendant then told Ms. Jackson he would take her to her home in Longstreet. Upon reaching Ms. Jackson's home, defendant grabbed Ms. Jackson while she was trying to get out of the vehicle and began stabbing her. Ms. Jackson received multiple stab wounds to her chest, abdomen, neck, face and hands. Defendant dragged Ms. Jackson into the back seat of the car and drove away. When defendant's car ran out of gas, he forced Ms. Jackson to get into the trunk and walked to the home of David Mason for gasoline.
Mason and defendant returned to the car in Mason's truck. Mason heard what he thought was a woman's voice coming from the trunk of the car. After putting gas in the car, defendant attempted several times to crank the engine. Defendant asked Mason to try to start the car and as Mason opened the driver's side door, he heard a woman inside the car asking for help. Mason testified that he heard the woman say, "help me, he is trying to kill me." When Mason asked who he had in the car, defendant responded *781 that it was a calf he was planning to butcher and barbecue. Mason, however, was not satisfied with defendant's answer and upon returning to his home, he called the police. Mason then called his brother and the two set out to find defendant's car.
Deputy Arbuckle of the DeSoto Parish Sheriff's Office stopped defendant and asked him to open the trunk of the car. Defendant told Deputy Arbuckle that he did not have a key to the trunk, but that if the deputy would follow him to Logansport, he would get a key from his sister. Deputy Arbuckle began following defendant. On the way to Logansport, however, defendant pulled his car onto the shoulder of the road and tossed something out of the window. A knife was subsequently recovered. The deputy then stopped defendant and placed him in custody. Mason, his brother and another deputy had arrived on the scene and, with their help, Deputy Arbuckle opened the trunk of defendant's car and found Ms. Jackson, who was in critical condition.

DISCUSSION
Defendant asserts that the trial court erred in instructing the jury as to the specific intent element of attempted first degree murder and attempted second degree murder.
The trial court correctly defined the intent element for the offenses of first and second degree murder as the killing of a human being with either the specific intent to kill or to inflict great bodily harm. Thereafter, the trial court properly set forth the definition of attempt. However, the trial court concluded its instructions on intent as follows:
[I]n order to convict the defendant of attempted first degree murder, you must find:
1. That the defendant had a specific intent to commit the crime of first degree murder; and
2. That the defendant did or omitted an act for the purpose of and tending directly toward the commission of the crime of first degree murder.
[I]n order to convict the defendant of attempted second degree murder, you must find:
1. That the defendant had a specific intent to commit the crime of second degree murder; and
2. That the defendant did or omitted an act for the purpose of and tending directly toward the commission of the crime of second degree murder.
The emphasized portions of the above quoted instructions do not state that specific intent to inflict great bodily harm is an element of attempted first or second degree murder; however, in defining these two completed offenses as having two distinct intent elements (specific intent to kill or to inflict great bodily harm), the instructions could be read to include the alternative element of a specific intent to inflict great bodily harm.
In addition, defendant argues that he was denied the effective assistance of counsel because his trial attorney: (1) allowed the trial court to erroneously charge the jury without objection; (2) allowed the prosecutor to inform the jury that they could convict him upon a finding of a specific intent to inflict great bodily harm; and (3) stated to the jury that the prosecution intended to establish his client's culpability by showing that defendant had "a specific intent to kill ... or to inflict great bodily harm."
A specific intent to inflict great bodily harm is not an element of the crime of attempted first degree murder or attempted second degree murder. State v. Jarman, 445 So.2d 1184 (La.1984); State v. Butler, 322 So.2d 189 (La.1975); State v. Linear, 600 So.2d 113 (La.App.2d Cir.1992). Obviously, an attempt to commit murder, whether first or second degree, requires that defendant possess the specific intent to kill and commit an overt act tending toward the accomplishment of that goal. LSA-R.S. 14:27; LSA-R.S. 14:30.1; Jarman, supra; State v. Huizar, 414 So.2d 741 (La.1982); State v. Owens, 606 So.2d 876 (La.App.2d Cir.1992).[1]
*782 The test for effectiveness of counsel is two-pronged. First, defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment to the U.S. Constitution. Second, defendant must show that the deficient performance prejudiced the defense by establishing that counsel's errors were so serious as to deprive defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State ex rel. Busby v. Butler, 538 So.2d 164 (La.1988). Only if defendant shows both error and prejudice will his conviction be found unreliable and set aside.[2]
In State v. Latiolais, 453 So.2d 1266 (La. App. 3d Cir.1984), writ denied, 458 So.2d 125 (La.1984), the defendant was convicted of attempted second degree murder. On appeal, the defendant claimed that the jury was improperly instructed as to the specific intent required for a conviction of second degree murder. Additionally, because there was no objection to the erroneous instruction, defendant contended that he was denied effective assistance of counsel.
The Third Circuit noted the general rule set forth in State v. Belgard, 410 So.2d 720 (La.1982), that absent a contemporaneous objection, a defendant may not complain of an erroneous charge to the jury. The court also took note of the exception to this rule, which is set forth in State v. Williamson, 389 So.2d 1328 (La.1980). In Williamson, the Supreme Court determined that it was within its province to review a complaint of constitutional violations that clearly appeared on the record. As noted by Justice Calogero in his concurrence in Belgard:
This case is distinguishable from Williamson. There was no recent legislative change in the legal definitions of the crime charged of which the trial judge and trial attorney were oblivious. Nor is it apparent from the record that the jury mistakenly applied the law, despite the fact that they may have been given an erroneous impression from the wording of the judge's charge.... Defendant cannot neglect to afford the trial judge an opportunity to correct the charge, take his chance on a jury acquittal, then complain after conviction of the error.
Belgard, 410 So.2d at 728. In Latiolais, the court distinguished State v. Guin, 444 So.2d 625 (La.App. 3d Cir.1983), noting that Guin was a case in which a contemporaneous objection to the erroneous instruction was made.[3] The court, after a review of the record, then found that it was not apparent that the jury mistakenly applied the law, even though they were given an erroneous impression from the trial court's wording of the charge. Latiolais, 453 So.2d at 1271.
In State v. Holmes, 620 So.2d 436 (La.App. 3d Cir.1993), writ denied, 626 So.2d 1166 (La.1993), the court held, under the particular factual circumstances, that although the evidence was sufficient to convict the defendant of attempted second degree murder, the trial court's erroneous inclusion of the alternative element of a specific intent to inflict great bodily harm in its instructions to the jury was reversible error. In Holmes, there was neither contemporaneous objection nor formal assignment of error; however, the Third Circuit analyzed the jurisprudence and concluded that the particular circumstances warranted application of the Williamson exception to the contemporaneous objection rule, rather than adherence to Belgard or Latiolais.
*783 The court in Holmes noted that, unlike Williamson, there were no recent legislative changes in the legal definition of the crime charged and stated:
That the trial judge, the prosecutor, and defense counsel were all three oblivious of the law in this case, however, appears certain. The error was repeated so many times that it could not be charged to mere oversight. It had to be a genuine misapprehension about what the law was.[4]
The defendant in State v. Porter, 626 So.2d 476 (La.App. 3d Cir.1993), was convicted by a jury of attempted second degree murder. The bill of information, which misdefined the charged offense of attempted second degree murder, was read to the jury.[5] Additionally, the trial court improperly instructed, without objection, the jury at the close of trial as to the elements of attempted second degree murder and the responsive verdict of attempted manslaughter. The court found that there was a substantial probability the jurors may have convicted the defendant under an incorrect definition of the charged offense. Although there was no contemporaneous objection to the improper instructions, the court felt bound to set aside the defendant's conviction on due process grounds because the error involved the definition of the offense of which the defendant was convicted.
The following is excerpted from Judge Stoker's concurrence in Porter:
I fully agree with the majority's reversal of defendant's conviction on due process grounds and the remand for a new trial....
In Latiolais the erroneous jury instruction (that an intent to inflict great bodily harm was sufficient to support a jury finding of guilty of attempted second degree murder) did not prejudice the defendant or rise to the point of depriving the defendant of due process. Any reasonably minded jury could have found Latiolais guilty of attempted second degree murder considering the fact that Latiolais repeatedly jabbed the victim about the head and chest area with the point of a screwdriver. The stabbing was sufficient to have killed the victim and did cause blindness. The victim was left bleeding by the side of the road as if he were dead.
In the case before us the jury very well might have found Harold Ray Porter guilty of attempted second degree murder based solely on the erroneous instruction that intent to inflict great bodily harm was sufficient. Porter's conduct was erratic and inappropriate. The bizarre action of slashing at someone in the back seat of an automobile while the actor is seated in the front seat does not on its face justify a conclusion that murder was intended. Due process requires that Porter be given a trial in which the jury is instructed that he was guilty of the attempt only if he had a specific intent to kill. If no such specific intent is found, the jury could find the defendant guilty of a battery.
The reversal and remand for a new trial of Harold Ray Porter is consistent with our action in Holmes and [State v.] Sittig [625 So.2d 392 (La.App. 3d Cir.1993)]. It is not in conflict with Latiolais.

Porter, 626 So.2d at 479-480. (Emphasis added).
In State v. Hall, 606 So.2d 972 (La.App. 3d Cir.1992), the defendant was convicted by a jury of two counts of attempted second degree *784 murder. On appeal, the defendant contended that the trial court erroneously instructed the jury as to the elements of second degree murder and that defense counsel's failure to object constituted ineffective assistance of counsel.[6] The court enunciated the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), then found that the improper jury charge constituted harmless error under Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); State v. Cage, 583 So.2d 1125 (La.1991), U.S. cert. denied, ___ U.S. ___, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991). After reviewing the record in its entirety, the court found that the record established the defendant's guilt beyond a reasonable doubt. Thus, the defendant's claim of ineffective assistance of counsel failed because there was no showing that he was prejudiced by his attorney's failure to object to the erroneous jury charge.
In State v. Serigny, 610 So.2d 857 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1263 (La.1993), the defendant was convicted of attempted second degree murder. After his conviction and sentence were affirmed on appeal, defendant applied for PCR, which was granted. The appellate court denied the state's writ application seeking review of the trial court's grant of PCR. The supreme court granted the state's writ and remanded the matter to the First Circuit. On remand, the court found that the defendant failed to establish actual prejudice from his trial counsel's failure to object to the trial court's erroneous instruction and the prosecutor's improper definition of the crime of attempted second degree murder. The court engaged in the two-part Strickland analysis and found that the defendant did not prove that his attorney's failure to object prejudiced his defense. This finding was based on the court's conclusion that the evidence overwhelmingly established that the defendant possessed the specific intent to kill the victim. Given the evidence, the court found that no jury could have reasonably concluded that the defendant merely intended to inflict great bodily harm on the victim. Therefore, the erroneous references by the court and prosecutor had no effect on the jury's verdict.
The following is excerpted from the opinion rendered by this court when the instant case was before us on appeal.
In order for this jury to have determined that the defendant was guilty of attempted first degree murder, the jury must have concluded that the defendant had the specific intent to kill this victim. Considering the facts which we have previously detailed, we have no difficulty determining that the record supports such a finding by the jury. In other words, the verdict of guilty of attempted first degree murder carries with it an implicit finding by the jury that the defendant acted with specific intent to kill and that he did an act tending directly toward the accomplishment of that offense. Thus all of the elements of attempted second degree murder have been sufficiently proven.
Harris, 480 So.2d at 944. Defendant stabbed the victim, Jackie Jackson, repeatedly in the chest, abdomen, neck, face and hands. He then dragged Ms. Jackson into the backseat of his automobile and drove away. When his vehicle ran out of gas, defendant told the victim to get into the trunk; however, Ms. Jackson was unable to move and defendant told her that he would "finish you off right here" unless she got into the trunk as requested. Defendant left the victim locked in the trunk and set out to obtain gasoline. When she was finally rescued from the trunk, Ms. Jackson was in critical condition. We find that the evidence is overwhelming that defendant, Archie Harris, possessed the requisite specific intent to kill the victim, Ms. Jackson. Under the harmless error analysis (State v. Hall, supra) and the two-part Strickland test (State v. Serigny, supra), we find that defendant's conviction must be upheld.[7]

*785 CONCLUSION

For the reasons set forth above, defendant's conviction for attempted second degree murder is AFFIRMED.
VICTORY, J., concurs in result.
JONES, J. Pro Tem., dissents with reasons.
JONES, Judge Pro Tem., dissenting.
I can not fairly distinguish State v. Butler, 322 So.2d 189 (La.1975); State v. Ball, 554 So.2d 114 (La.App.2d Cir.1989); and State v. Carter, 559 So.2d 539 (La.App.2d Cir.1990), all of which require reversal where the jury is instructed that it may convict a defendant of attempted second degree murder upon a finding that he intended to inflict great bodily harm.
The statutes defining the crime of attempted second degree murder clearly requires that the jury be instructed that it must find that a defendant had a specific intent to kill before he can be convicted of such crime. LSA-R.S. 14:27(A); LSA-R.S. 14:30.1. Where a jury convicts after having been instructed that it may convict a defendant of attempted second degree murder upon a finding that he intended to inflict great bodily harm upon the victim, an error of substance, and not harmless error, has been committed.
When substantial error has been committed at the trial, the duty of the appeals court is clear. The applicable principles of law were well stated in State v. Butler, 322 So.2d at 193 (La.1975) as follows:
The state through its legislature has defined the conduct constituting particular offenses, with particular consequences (sentences). To secure conviction for any such offenses, the state through its prosecutors must charge the accused with a particular crime or crimes and prove the accused's guilt of the legislatively-defined crime(s) beyond a reasonable doubt. The jury with proper instructions of law is the exclusive arbiter of the innocence or guilt of the crime charged. The courts are constitutionally bound to assure that those accused before our courts are tried in accordance with law and to reverse, where substantial error of law is committed.
The conviction in this case should be reversed and the case should be remanded for a new trial.
I must dissent.
NOTES
[1] Inclusion of the phrase "or to inflict great bodily harm" in a jury instruction for attempted second degree murder has been held to constitute reversible error. State v. Butler, 322 So.2d 189 (La.1975); State v. Guin, 444 So.2d 625 (La.App. 3d Cir.1983). We note that Butler and Guin differ from the instant case; the jury instructions currently under consideration do not include the phrase "or to inflict great bodily harm."
[2] Failure of defense counsel to object to a jury instruction erroneously defining the elements of attempted second degree murder has been found to constitute ineffective assistance of counsel and thus reversible, not harmless error. See State v. Carter, 559 So.2d 539 (La.App.2d Cir.1990); State v. Ball, 554 So.2d 114 (La.App.2d Cir. 1989); Guin, supra.
[3] In Guin, supra, the trial court improperly instructed the jury that a conviction of attempted second degree murder could be supported by a finding that the defendant possessed the specific intent to inflict great bodily harm. Defense counsel objected to the erroneous instruction, which was nonetheless maintained. The Third Circuit reversed the conviction and remanded the case to the trial court, noting that the erroneous instruction did not constitute harmless error.
[4] Of note is Chief Judge Domengeaux's dissent in Holmes, supra. Judge Domengeaux relied on State v. Thomas, 427 So.2d 428 (La.1982), in which the supreme court limited the Williamson holding to its facts, and State v. Salone, 605 So.2d 229 (La.App.2d Cir.1992), in which the Second Circuit held that absent a contemporaneous objection, a defendant was precluded on appeal from complaining of a jury instruction that improperly defined the crime of attempted manslaughter. Further, the dissenting opinion noted the overwhelming evidence in the record that supported the defendant's conviction, which showed that the jury did not misapply the law as a result of the erroneous instruction.
[5] See also State v. Cavazos, 610 So.2d 127 (La. 1992), in which the supreme court reversed the trial court's grant of post-conviction relief in a case involving erroneous, but unobjected to, comments and allegations in the bill of information. In Cavazos, the supreme court found that such errors, if not objected to by defense counsel, do not require reversal of a conviction if the trial court properly instructs the jury at the end of the trial.
[6] The objectionable instruction in Hall is identical to the instructions before us in the instant case.
[7] By so holding, we are implicitly declining to follow State v. Carter, 559 So.2d 539 (La.App.2d Cir.1990), and State v. Ball, 554 So.2d 114 (La. App.2d Cir.1989). In Carter, a different panel of this court reversed the defendant's conviction by finding that defense counsel's failure to object to the court's erroneous jury charge and comments by the prosecutor was so serious as to deprive the defendant of a fair trial. In Ball, this court found that the defendant was denied effective assistance of counsel based on: (1) counsel's failure to object to the trial court's erroneous instruction to the jury; (2) counsel's failure to object to the prosecutor's reference to intent to inflict great bodily harm as an element of attempted second degree murder; and (3) counsel's own statement to the jury that they could convict the defendant upon a finding of intent to inflict great bodily harm. Although noting that the evidence was substantial that the defendant possessed the specific intent to kill, the Ball court found that the jury could have convicted the defendant by finding only an intent to inflict great bodily harm.