444 So.2d 228 (1983)
STATE of Louisiana
v.
Todd HEBERT.
No. 83-KA-0452.
Court of Appeal of Louisiana, First Circuit.
December 22, 1983.
Alexander Doyle, Asst. Dist. Atty., Houma, for State-plaintiff-appellee.
G. Patrick Hand, Jr., New Orleans, for defendant-appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
Defendant, Todd Hebert, was charged by bill of information with having committed the crime of attempted second-degree murder in violation of R.S. 14:30.1 and 14:27. Defendant waived trial by jury, and was subsequently found guilty by the trial judge of the lesser offense of aggravated battery. Defendant was sentenced to five years at hard labor. Defendant now appeals his conviction and sentence, alleging that there was insufficient evidence for his conviction; that the trial court erred in denying his motion for a new trial; and that the sentence imposed is excessive.

BACKGROUND FACTS
In the early morning hours of September 14, 1980, sheriff's deputies discovered the badly battered body of the victim herein, Robert Roy Snide, lying unconscious on a bloody mattress at a dump site on Bayou Blue in Terrebonne Parish. Snide was seriously injured, being bruised on his anterior neck and head, with fractures of the skull, both sides of the jaw, and the right lateral orbit and infraorbital bone. Additionally, Snide suffered three-inch lacerations to his chin and scalp, smaller lacerations to the left eye, and extensive swelling of the face. Because of his injuries, Snide could not remember how he was injured, and thus could not testify as to who was the perpetrator.
The deputies had been led to the scene by defendant and his father. Defendant told the deputies that he had hit Snide with his car while driving around with Brian Beasley. Defendant stated that they put Snide in his car and deposited him at the dump site on Bayou Blue. Defendant then drove Beasley home and headed home himself. Feeling guilty, defendant told his parents that he had been involved in a hit-and-run accident. They accompanied defendant to the sheriff's office that morning *229 where defendant gave his oral statement that he had caused a hit-and-run accident. Beasley also came to the office, and stated that there had been a hit-and-run accident.
However, later that day Beasley gave another statement indicating that no hit-and-run accident occurred, but rather it was defendant who beat up Snide at the dump site. Beasley stated that he only corroborated defendant's hit-and-run story because of threats made to him by defendant. Defendant denied Beasley's story, and testified that it was Beasley who beat up Snide. Defendant stated he devised the hit-and-run story to protect himself and Beasley, who was on probation at that time.

INSUFFICIENT EVIDENCE
Defendant contends that the evidence presented by the State is insufficient to sustain his conviction. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), when a conviction involves direct or direct and circumstantial evidence, a reversal of a guilty verdict requires that the reviewing court be convinced that even when the evidence is viewed in the light most favorable to the State, no rational trier of fact would conclude that defendant's guilt had been proved beyond a reasonable doubt. State v. Washington, 421 So.2d 887 (La.1982).
In examining the evidence at trial, it must be noted that the only direct evidence linking defendant to the crime is the testimony of Beasley, an alleged accomplice who was initially charged in the incident, but such charges were later dropped. While a conviction can be sustained on the uncorroborated testimony of a purported accomplice, i.e., Beasley, such testimony should be treated with great caution. State v. May, 339 So.2d 764 (La.1976); State v. Matassa, 222 La. 363, 62 So.2d 609 (1953).
At trial, Beasley testified for the State. Beasley stated that he and the defendant picked up Snide, who was hitchhiking, in the parking lot of the White House Lounge. They then decided to drink beer at a bar and later go to the dump site to smoke marijuana. When they arrived at the site, defendant brought out his marijuana pipe, lit it and passed it around. After awhile, Beasley testified that defendant took out his nun-chucks, a martial arts weapon, and began swinging them. Defendant then allegedly struck Snide with the nun-chucks, because Snide had hidden the marijuana pipe in his pocket.
According to Beasley, Snide was knocked unconscious to the ground, and defendant then began to choke him with the rope from the nun-chucks, which had broken upon impact. Beasley testified that he tried to talk defendant out of beating Snide, but defendant kept hitting Snide in the head with a beer mug. Defendant wanted Beasley to help him drag Snide over to a nearby pond, but Beasley refused and asked to leave. Beasley testified that defendant then got in the car with him and intentionally rolled over Snide twice with his left front wheel.
Defendant and Beasley then left the dump and defendant drove Beasley to his house. On the way, Beasley testified they stopped at a car wash on upper Bayou Blue Road where defendant washed underneath his car. Later that morning, Beasley was summoned by deputies for his statement, and he corroborated defendant's story that Snide had been injured in a hit-and-run accident. Later that evening, however, Beasley gave the above version of the incident to the police, stating that defendant had threatened him at the sheriff's office that morning into corroborating his hit-and-run story.
Defendant testified in his own behalf at trial, and his story corroborates Beasley's up to the events at the dump site. Defendant testified that while smoking the marijuana, Beasley signaled to defendant, unbeknownst to Snide, to hit Snide and start a fight. Beasley indicated he also wanted to fight Snide. Defendant shrugged off Beasley's suggestion, and all three parties continued smoking marijuana.
*230 After a great deal of smoking, defendant went to the front seat of the car to lie down. Defendant testified he is not sure how long he laid there, but some time later Beasley came and told him that he had "really fucked that dude good." Defendant suspected that Beasley had beaten Snide up because of his earlier behavior. Defendant went to the front of the car, and found Snide on his back. Snide then lifted himself up and charged defendant, grabbing him. Defendant pushed Snide off twice, and finally knocked him out with a punch.
At this time, Beasley panicked and started yelling to leave before someone comes by. Defendant stated that they then got in the car and he tried to turn around, but the area was cramped and he was unable to do so. Defendant stated that during this turning process, he may have hit Snide, but he is unsure. Finally, defendant gave up on turning around and backed out of the dump to the main road.
After leaving the dump site, defendant testified that he took Beasley home, who refused defendant's suggestion to go back to help Snide. Defendant stated that he did not stop at a car wash as testified by Beasley.
Both of defendant's parents testified, stating that earlier on the night of September 13, they had seen defendant and Beasley at the local fair. Mr. Hebert had told defendant to be in early as he needed defendant's car to go fishing the next morning. When defendant failed to come in that night as expected, Mr. and Mrs. Hebert left around 2:00 a.m. to go look for defendant. After driving around for awhile, they spotted defendant's car crossing Highway 90, proceeding from lower Bayou Blue Road to upper Bayou Blue Road. They followed the car to the entrance of Beasley's subdivision where he lived, and then stopped defendant when he came back a short time later. At no time did they observe defendant stop at a car wash on upper Bayou Blue Road, as testified by Beasley.
Mrs. Hebert got in defendant's car and drove it home, whereupon defendant told them he had been involved in a hit-and-run accident. Both parents accompanied defendant to the sheriff's office that morning. Mr. Hebert stated that defendant and Beasley were never alone together so as to allow defendant to allegedly threaten Beasley into corroborating the hit-and-run story, as testified by Beasley.
Dr. Patrick McNulty, the emergency room physician who treated Snide, also testified. He stated that Snide's injuries were not consistent with being rolled over by a car tire, which allegedly occurred according to Beasley.
Beasley's testimony contained other contradictions. He testified that he was not a violent person, but subsequently admitted having a violent altercation at his home with his father that required treatment at a hospital emergency room. Beasley attributed this outburst to drugs that allegedly were planted in his drink at a local bar. Beasley also denied being fired from his job for using drugs, but Curtis Saucier, his employer, testified that Beasley was fired because he was in a daze for several days and could not handle his job. Saucier, who grew up with Beasley in the area, also stated that Beasley's reputation for honesty was terrible. It should also be noted that at the time of trial, Beasley was in jail charged with D.W.I., having three prior D.W.I. convictions and a conviction for marijuana possession.
While Beasley's version of the incident is undermined by various contradictions and credibility problems, the defendant's account is not entirely without flaws. Defendant testified he is unsure as to how Snide became so severely injured, although he does admit punching him once, which admittedly cannot cause such injuries. But, defendant's clothes, which were analyzed, only revealed a small amount of Snide's blood on the pants, with none on his shirt. One would expect a greater amount of bloodstains on defendant's clothing if Beasley's version of the incident occurred. Curiously, Beasley's clothes were not examined for bloodstains. Additionally, there *231 was testimony by the defendant and his parents that the clothes Beasley wore to the sheriff's office that morning were not the same ones he had on the night before, although Beasley told the deputies that the clothes were indeed the same.
In sum, we feel that the testimony of Beasley, which is the only direct evidence tying defendant to the crime, would fail to convince any rational trier of fact to conclude that defendant's guilt had been proved beyond a reasonable doubt, even when examined in a favorable light as per Jackson, supra. We therefore reverse and vacate defendant's conviction and sentence.

DECREE
For the above-expressed reasons, defendant's conviction and sentence are reversed and vacated.
CONVICTION AND SENTENCE REVERSED AND VACATED.