499 So.2d 741 (1986)
STATE of Louisiana, Appellee,
v.
MacArthur R. BROOKS, Appellant.
No. CR 86-99.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1986.
*743 Brett Brunson, Natchitoches, La., for defendant-appellant.
Mike Henry, Dist. Atty., Natchitoches, La., for plaintiff-appellee.
Before DOMENGEAUX, FORET and STOKER, JJ.
FORET, Judge.
Defendant, MacArthur Brooks, was charged by bill of information with attempted first degree murder of Randy Weaver, a violation of LSA-R.S. 14:27 and LSA-R.S. 14:30, and attempted second degree murder of Sandra McClinton, a violation of LSA-R.S. 14:27 and LSA-R.S. 14:30.1. Defendant initially pleaded not guilty and not guilty by reason of insanity to both charges. On August 2, 1985, defendant was found to be sane and capable of assisting in his defense.
Pursuant to trial by a twelve-person jury, defendant was found guilty of a lesser offense, aggravated battery on Randy Weaver, defined by LSA-R.S. 14:33 and 34, on the charge of attempted first degree murder. On the charge of attempted second degree murder of Sandra McClinton, defendant was found guilty as charged.
Defendant's motion for a new trial was denied on November 15, 1985. On December 6, 1985, defendant was sentenced to five years at hard labor for the aggravated battery conviction and forty years at hard labor for the attempted second degree murder conviction. The sentences are to run consecutively.

FACTS
On March 17, 1985, at approximately 3:00 P.M., defendant waited in the Natchitoches Parish Hospital lobby for his ex-girlfriend, Sandra McClinton, to get off work. He procured transportation with McClinton and her co-worker, Charlotte Folson. Folson drove while McClinton rode in the front passenger seat, and defendant was seated in the back seat of the car. McClinton requested that Folson leave her at her mother's house, whereupon defendant pulled out a revolver and ordered Folson to take him and McClinton to his home. In route to defendant's residence, he pointed the gun alternately at each woman's head.
Defendant forced McClinton out of Folson's vehicle and into his house at gunpoint. He ordered McClinton to sit at a table and began telling her such things as, "You don't want me no more," before striking her head with the gun. At this time, McClinton fell to the floor. Attempting to get up, McClinton sustained gunshot wounds in the arm and finger when defendant shot her twice.
McClinton somehow managed to escape from the house but was again captured by the defendant. When McClinton fell to the ground outside the house, defendant straddled her and began to choke her. Defendant then pointed a gun at the victim's face and pulled the trigger. Fortunately, the gun misfired. Defendant then pulled a knife from his boot and put the knife to McClinton's throat, at which time he cut McClinton on the chin while struggling with her. Precisely at this moment, the police officers arrived.
One of the police officers at the scene, Corporal Randy Weaver, jumped the defendant from his blind side. Immediately, *744 all the officers jumped the defendant, wrested the gun from him, and subdued him.
Defendant has alleged six assignments of error, but briefed only five. Through assignment of error no. 6, defendant contended the trial court erred in considering offenses for which defendant was not prosecuted or for which charges were dropped when sentencing defendant for attempted second degree murder. Assignments of error neither briefed nor argued are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Freeman, 482 So.2d 1078 (La.App. 3 Cir.1986), writ denied, 488 So.2d 196 (La.1986).

ASSIGNMENTS OF ERROR NOS. 2 & 3
By these two assignments of error, defendant alleges that: (1) the trial court erred in failing to give defendant's requested charge to the jury pertaining to the definition of the offense of attempted second degree murder, and (2) the trial court erred in charging the jury that the offender must have specific intent to kill or inflict great bodily harm to be guilty of attempted second degree murder.
According to the record, the trial judge failed to instruct the jury as to attempted second degree murder. The trial judge merely defined attempted first degree murder and then recited the responsive verdicts thereunder. In instructing the jury on the second count, attempted second degree murder, the trial judge stated:
"On the charge of attempted second degree murder the possible verdicts that you may reach are as follows; we the jury find the accused guilty. We the jury find the accused guilty of attempted manslaughter. We the jury find the accused guilty of aggravated battery. We the jury find the accused not guilty."
Obviously, the trial judge did not define the elements of attempted second degree murder. Arguably, defendant did not object to this particular deficiency and therefore waived the right to contest this particular issue on appeal since erroneous jury instructions are not considered an error patent. State ex rel. Ross v. Blackburn, 403 So.2d 719 (La.1981). However, defense counsel immediately objected to the court's refusal to give his proposed charges to the jury, and he objected to the inclusion of the phrase "or great bodily injury" in the definitions of attempted first degree murder and attempted second degree murder contending that, if the jury found the presence of a specific intent to commit great bodily injury, that would only be consistent with the verdict of aggravated battery rather than guilty of attempted first degree murder or attempted second degree murder. Consequently, we believe defendant has preserved this issue for appeal.
Defendant contends that because of the trial judge's instructions, he gave the jury the choice of finding the defendant guilty of attempted second degree murder (or attempted first degree murder), although they may only have found that defendant intended to inflict great bodily harm rather than intending to kill. In support of this argument, defendant relies on State v. Guin, 444 So.2d 625 (La.App. 3 Cir.1983), in which this Court found that the inclusion of the element of "intent to inflict bodily harm" when charging the jury with the definition of attempted second degree murder was reversible error. The specific intent to kill but not the specific intent to inflict great bodily harm is an essential element of the crime of attempted first or attempted second degree murder. Accordingly, the burden of proof for the crime of attempted first or attempted second degree murder is much more onerous than that for the crime of first or second degree murder. In proving first or second degree murder, either the specific intent to kill or the specific intent to inflict great bodily harm can be proven. However, in proving attempted first or attempted second degree murder, only a specific intent to kill will suffice.
For example, should the defendant use a deadly weapon to inflict great bodily harm, *745 he could be found guilty of first or second degree murder if the victim dies, but not guilty of attempted first or attempted second degree murder if the victim lives. Thus, a jury instruction for attempted first or attempted second degree murder that a defendant could have the intent either to kill or to inflict great bodily harm would be improper.
This Court, in State v. Guin, supra, found, on the basis of State v. Butler, 322 So.2d 189 (La.1975), that the improper charge constituted reversible error. The pertinent language in Butler, at 193-194, provides as follows:
"Fundamental to American law are the principles here applicable. The state through its legislature has defined the conduct constituting particular offenses, with particular consequences (sentences). To secure conviction for any such offenses, the state through its prosecutors must charge the accused with a particular crime or crimes and prove the accused's guilt of the legislatively-defined crime(s) beyond a reasonable doubt. The jury with proper instructions of law is the exclusive arbiter of the innocence or guilt of the crime charged. The courts are constitutionally bound to assure that those accused before our courts are tried in accordance with law and to reverse, where substantial error of law is committed.
To suggest that no substantial error of law occurs, where the jury was in effect instructed that a person guilty of aggravated battery can be convicted of attempted murder although he has no specific intent to kill by the battery, is to suggest an untrammelled discretion of prosecutor, jury, and court to punish an accused for offensive conduct. To the contrary, the legislature has authorized prosecutions for particular crimes. In a government of law and of constitutionally and legislatively limited powers, neither prosecutor, jury, nor court are empowered to sustain a conviction for conduct not punishable by the crime for which the accused stands charged."
We agree with the arguments presented by defense counsel. We find the evidence overwhelming as to defendant's specific intent to kill the victim and therefore are reluctant to overturn his conviction. In spite of our reservations, the law is clear and the jurisprudence well established that attempted second degree murder requires the specific intent to kill; specific intent to cause great bodily harm will not suffice. State v. Guin, supra; State v. Butler, supra; State v. Strother, 362 So.2d 508 (La.1978).
Accordingly, the trial court's error in instructing the jury requires that defendant's conviction for this crime be reversed and the sentence vacated.

ASSIGNMENTS OF ERROR NOS. 1 AND 4
By these assignments of error defendant contends that the trial court erred in denying his motion for a new trial regarding his conviction for aggravated battery of Corporal Weaver as a result of insufficient evidence and that the trial court made an improper comment on the evidence by cocking and snapping the trigger of the revolver allegedly used by defendant, in the presence of the jury and over a courtroom microphone. Specifically, defendant argues that the trial judge's action was improper because it effectively involved a presentation of evidence for the State, in that it demonstrated a material fact in dispute, i.e., the audibility of the gun click when misfiring or firing on an empty cylinder.
The standard of review under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt proof of each element of the crime (emphasis ours). State v. Captville, 448 So.2d 676 (La.1984); State v. Austin, 470 So.2d 406 (La.App. 3 Cir.1985); State v. Hebert, 444 So.2d 228 (La.App. 1 Cir.1983).
Defendant was convicted of aggravated battery, a violation of LSA-R.S. 14:33 and LSA-R.S. 14:34, which state:

*746 "§ 33. Battery defined
Battery is the intentional use of force or violence upon the person of another, or the intentional administration of a poison or other noxious liquid or substance to another.
Acts 1978, No. 394, § 1.
§ 34. Aggravated battery
Aggravated battery is a battery committed with a dangerous weapon."
In order to convict defendant of the crime of aggravated battery, the prosecution must prove that defendant intentionally used force or violence upon Corporal Weaver, that the force or violence was inflicted with a dangerous weapon, and that the dangerous weapon was an instrumentality used in a manner likely to cause death or great bodily harm. State v. Day, 468 So.2d 1336 (La.App. 1 Cir.1985). Physical contact, whether injurious or merely offensive, is a necessary element of the crime of aggravated battery. State v. Dauzat, 392 So.2d 393 (La.1980).
Defendant contends that there was no evidence that Corporal Weaver was struck by defendant's gun. Defendant's allegation is inaccurate because such testimony does appear in the record. However, the record reflects conflicting testimony presented by the State on this particular issue.
At trial, Officer Tommy R. Scott of the Natchitoches Parish Police Department testified that around 3:15 P.M. on March 17, 1985, he and several other police officers had surrounded defendant, who was straddling his ex-girlfriend while holding a pistol to her head. After trying to talk the defendant into giving up his gun, Corporal Randy Weaver jumped the defendant from his blind side. Defendant then turned around, put the gun barrel beneath Officer Weaver's right rib cage, and pulled the trigger. Fortunately, the gun misfired. Officer Scott testified he distinctly heard the snap of the trigger. Officer Randy Williams testified that he observed this attempted shooting and Officer Walter Meziere also testified that he heard the gun click.
Contradictorily, the alleged victim, Corporal Randy Weaver, testified at trial that he hit the defendant from behind and that Lt. Cobb came from the other side. Weaver testified that he did not hear a gun click and that he was not injured in any way. Lt. Gerald Cobb corroborated Corporal Weaver's testimony when he testified that he and Corporal Weaver hit the defendant, took him down, and subdued him. He testified that several police officers grabbed defendant's hand with the gun and pushed it toward the ground into the mud, and at that time Corporal Weaver took the weapon.
Additionally, at trial, the jury had the benefit of hearing just how audible the gun clicked on an empty cylinder (as it would do when misfiring). The audibility of the gun click was a material issue at trial. Viewing all of this evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found, beyond a reasonable doubt, that defendant did in fact commit aggravated battery on Corporal Weaver. Consequently, assignment of error no. 1 is without merit because we are unable to say that the trier of fact erred.
As previously mentioned, the crime of aggravated battery necessitates proof of a battery committed with a dangerous weapon. In this case, the weapon is a gun. Some of the testimony adduced at trial indicated that defendant pointed a gun at Officer Weaver and pulled the trigger, whereupon the gun was fired. However, there is no indication that the victim, Officer Weaver, was struck by either the gun or a bullet fired from the gun. The audibility of the gun's "click" when the trigger is pulled on an empty cylinder was in dispute. As a result of the conflicting testimony adduced at trial, the credibility of several of the State's witnesses was at issue. The record reflects that it was the trial judge who cocked and pulled the trigger of the weapon.
Defendant objected to the court's cocking the pistol and pulling the trigger, thereby *747 making an audible click in the presence of the jury. Prior to this point in the trial, some of the witnesses for the State testified they did hear the gun click. However, the prosecution did not ask any witness to click the gun during the presentation of its case against defendant. The trial judge, just prior to the end of the testimony of the last State witness, obtained the gun allegedly used by defendant and, in the presence of the jury, cocked the gun and snapped the trigger. We include the following portion from pages 156 and 157 of the record:
"A. Not since it has been in my possession. And there has been no ballistics testing of it. Not to my knowledge.
* (AUDIBLE CLICK OF THE PISTOL)
Q. Thank you, that is all I have.
MR. WILLIAMS: No further questions, Your Honor.
* (AUDIBLE CLICK OF THE PISTOL)
(WITNESS LEAVE STAND)
MR. BRUNSON: May we approach the bench Your Honor?
JURY WAS REMOVED FROM COURTROOM
THE COURT: State your objection please.
MR. BRUNSON: Your Honor, I would also like the record to show that the Trial Judge after the jury had observed the pistol, that was State's Exhibit 2, cocked the pistol and pulled the trigger and snapped the hammer in the presence of a jury which made an aubible click. And I would object to the Court doing that as that is a physical comment on the evidence in the case.
THE COURT: Okay, let the objection be noted.
MR WILLIAMS: Is that your objection.
MR. BRUNSON: Wait a minute.
THE COURT: Is it alright if I click it while the jury is out? (audible click ... click)
MR. BRUNSON: No objection to that Your Honor." (Emphasis ours.)
We find that this is an impermissible comment on the facts by the judge in the jury's presence. Article 772 of the Louisiana Code of Criminal Procedure provides:
"Art. 772. Comment on facts by judge in jury's presence prohibited
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
In a per curiam opinion by the trial judge, he writes that defendant would have the appellate court believe that the cocking and snapping of the gun trigger was done intentionally and in such a manner as it would be considered reversible error or done to inflame the jury, etc. The trial judge goes on to write that the actual facts are that, during the course of the trial and in a very quiet manner, the Court personally inspected the weapon in a position on the Judge's bench where it was done quietly, carefully and without making any special gestures or signals to the jury, the Court checked the weapon to make sure that it was unloaded. The trial judge notes that the weapon was, in fact, unloaded. The trial court goes on to state that:
"No mention was made on the record of this checking of the weapon at the time that it occurred and no one brought it to the attention of the jury. Whatever noise may have been picked up over the Courtroom microphone would have been incidental noise associated with the pulling back of the receiver, opening up the weapon so that the chamber could be observed to make sure there were no bullets in the barrel or magazine."
The record reflects, at page 154, the following discussion took place:
"Q. Okay. Your Honor, at this time I am going to offer State's Exhibit 1 and 2 into evidence. Ask the clerk to mark it and I would like it shown to the jury.
THE COURT: Just go ahead and pass it to the jury and then Mrs. Swafford can mark them.

*748 MR. BRUNSON: Are you sure you got all of the bullets out of that ...
MR. WILLIAMS: It has been examined, Your Honor, there are two spent cartridges.
Q. Lieutenant Thompson have you examined this weapon to make sure those cartridges are spent?
A. That's correct I have.
Q. There are no live rounds in the weapon?
A. There is no live rounds in the weapon. There should be two loose rounds in the bag and two spent cartridged in the cylinder.
Q. Let the record show Your Honor, I am going to open that cylinder, and ask the bailiff to show that pistol along with this bag, two live rounds.
Q. I tender the witness."
On page 156 of the record, the discussion cited on page 10 of this opinion took place. It is quite obvious from the record that everyone in the courtroom was aware that the gun had been unloaded; it is also quite clear from the record that the clicking of the pistol was audible.
After reviewing the totality of circumstances surrounding the trial, the testimony of the victims and several police officers, we find the trial court's actions in cocking the pistol and pulling the trigger constituted an impermissible comment on the evidence. Essential to the concept of a fair trial is the requirement of complete neutrality on the part of the trial judge. A trial judge has a duty to abstain from making any comment in the presence of the jury. However, a judge, in his discretion, may examine a witness to bring out needed facts which are not elicited by the parties, or to ask clarifying questions. State v. Gordy, 380 So.2d 1347 (La.1980). We do not believe a trial judge may present evidence for one side or the other.
The test upon review is, was the act so obtrusive as to indicate a comment on the evidence. State v. Nix, 327 So.2d 301 (La. 1975), cert. denied, 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198 (1976). It is possible that a trial judge's remarks describing evidence for the record may not imply an opinion as to the defendant's guilt or innocence and therefore any error committed may be harmless. State v. Joseph, 437 So.2d 280 (La.1983). However, a trial judge must be cognizant at all times that he must not abandon his judicial function of complete impartiality by assuming the investigative duties of the prosecutor and law enforcement personnel. State v. Stephens, 438 So.2d 203 (La.1983).
We find the trial judge's actions in handling the weapon so obtrusive as to indicate a comment on the evidence, and those actions were quite relevant in determining defendant's guilt or innocence in regard to the aggravated battery conviction. We believe that there is a reasonable possibility that the evidence complained of might have contributed to the conviction. Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Delaware v. Van Arsdan, 475 U.S. ___, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
The issue of how loud the gun "clicked" on an empty cylinder when it misfired had been repeatedly raised on cross-examination of all law enforcement officers who were present at the scene when the gun allegedly misfired during the commission of the offenses. The jury was undoubtedly curious about the sound the gun would make when misfiring. There was plenty of room for doubt about the officers' ability to hear the gun click when it misfired prior to the trial court's actions. We find that these actions clearly prejudice the defendant. After the trial court's actions, any reasonable doubt about every element of the crime of aggravated battery being proven was removed. Without the presentation of the gun click, we are uncertain of whether the evidence would convince any rational trier of fact even when the evidence is viewed in the light most favorable to the prosecution. State v. Hebert, supra.
Consequently, in light of the above discussion, we reverse defendant's convictions and vacate the sentences imposed.
As a result of our ruling, assignment of error no. 5 concerning an excessive sentence need not be discussed.

*749 DECREE
For the reasons hereinabove assigned, defendant's conviction and sentence for aggravated battery are reversed and vacated; defendant's conviction and sentence on the charge of attempted second degree murder are reversed and vacated; and the case is remanded for retrial in accordance with the law.
REVERSED, SENTENCES VACATED, AND REMANDED.
DOMENGEAUX, J., respectfully dissents and assigns reasons.
DOMENGEAUX, Judge, dissenting.
I find that the evidence is more than sufficient to support defendant's convictions of aggravated battery on Weaver and attempted second degree murder on McClinton.
On the question of the alleged improper jury charge, the defendant did not object to the alleged deficiencies referred to, and therefore, in my opinion, waived the right to contest the issue on appeal. But assuming arguendo that it was not waived, I find that the evidence indicates that in finding the defendant guilty of attempted second degree murder, the jury based its verdict on a finding of the specific intent to kill rather than a specific intent to inflict great bodily harm. It would thus appear that the trial judge's jury instructions did not substantially affect the rights of the defendant, and should not be grounds for a reversal. Further, if the improper instruction applies to the charge of attempted first degree murder, the instruction is irrelevant since the jury found the defendant guilty of aggravated battery. In finding the defendant guilty of aggravated battery, the jury did not find the defendant had the intent to inflict great bodily harm or kill, for aggravated battery is defined as the intentional use of force or violence with a dangerous weapon, and does not include the element "the intent to inflict great bodily harm or kill." Even though the instruction may have been less than ideal, it does not appear to have prejudiced the defendant, and thus, should be considered harmless error. State v. Lyles, 483 So.2d 1174 (La.App. 4 Cir.1986); State v. West, 419 So.2d 868 (La.1982); State v. Harriman, 469 So.2d 298 (La.App. 2 Cir.1985).
Concerning the pistol cocking and snapping of the gun trigger by the district judge, I respectfully suggest that Article 772 of the Louisiana Code of Criminal Procedure is unambiguously restricted to "comments" by the trial judge and not to any of his "actions". I am not prepared to stretch the application of Article 772 to state that the judge's actions in inspecting the gun, cocking it and snapping it, constitute a comment on the facts, or implies an opinion as to defendant's guilt or innocence. The majority opinion's reliance on cetain language contained in State v. Nix is misplaced. That case is not apposite, is inconclusive on the subject, and is at best obiter dicta.
But assuming arguendo that the judge's action was a "comment", a review of the totality of the circumstances surrounding the trial, including the testimony of the two victims and several police officers, it nevertheless does not appear likely that the trial judge's actions with the gun constituted an impermissible comment on the evidence. Therefore, any possible error by the trial court in this regard was highly unlikely to prejudice the defendant and should be considered harmless. State v. Joseph, 437 So.2d 280 (La.1983); State v. Roberson, 445 So.2d 12 (La.App. 4 Cir.1983), writ denied, 449 So.2d 1344 (La.1984).
If my views carried in this case, it would be necessary, as mandated by our Supreme Court, to review the sentences for excessiveness, inasmuch as defendant cites excessiveness as an error. My review of the record shows that no excessiveness of sentence exists in this case. (I have expressed many times in the jurisprudence my respectful disagreement with State v. Sepulvado, 427 So.2d 858 which mandates review of sentences for excessiveness.)
I respectfully dissent.