758 So.2d 301 (2000)
STATE of Louisiana
v.
Peter WRIGHT.
No. 99-1137.
Court of Appeal of Louisiana, Third Circuit.
March 1, 2000.
*302 Lawrence C. Billeaud, Lafayette, Louisiana, Counsel for Defendant/Appellant.
Eddie Knoll, District Attorney, Michael F. Kelly, Assistant District Attorney, Marksville, Louisiana, Counsel for Appellee/State of Louisiana.
Court composed of NED E. DOUCET, Jr., Chief Judge, BILLIE COLOMBARO WOODARD, and MICHAEL G. SULLIVAN, Judges.
DOUCET, Chief Judge.
On July 28, 1998, the Defendant, Peter Wright, was charged by a bill of information with attempted first degree murder, in violation of La.R.S. 14:27 and 14:30(A)(3). The bill was amended on October 13, 1998 to charge Defendant with two counts of aggravated battery in violation of La.R.S. 14:34. Following a trial on November 18, 1998, the jury returned a verdict of guilty as charged to count one and a responsive verdict of guilty of second degree battery to count two. Thereafter, the Defendant filed a motion for a post-verdict judgment of acquittal, or, alternatively, for a new trial and the State filed a habitual offender bill. Both matters were heard on February 23, 1999. The Defendant's motion was denied and the matter of the habitual offender bill was taken under advisement. On March 23, 1999, the court ruled that the Defendant was a third felony offender and scheduled sentencing for April 27, 1999, to allow for a hearing on the Defendant's supplemental motion for a new trial. That motion was withdrawn on April 27, 1999 and the Defendant was sentenced to ten years at hard labor without benefit of probation, parole or suspension of sentence on each conviction, the sentences to run consecutively to each other and to any sentence previously imposed. The Defendant now appeals his convictions.

*303 FACTS:

The Defendant, an inmate at the Avoyelles Correctional Center, was involved in an argument with another inmate, Rufus Searile,[1] on April 13, 1998. The argument lead to a fight. During the fight, the Defendant stabbed Searile three times in the back and once in his chest with a pair of scissors. Correctional Officer, Sergeant Paul Pickney was stabbed in the arm when he attempted to break up the fight.

ERRORS PATENT:
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there are two errors patent and one possible error patent.
The first error patent concerns the sentence imposed after the Defendant was adjudicated a habitual offender. Although the Defendant was convicted of two offenses on the same date, aggravated battery and second degree battery, the habitual offender bill failed to specify which count was being enhanced under La.R.S. 15:529.1. Furthermore, in adjudicating and sentencing the Defendant as a third felony offender, the trial court also failed to specify to which of these two offenses the enhanced penalty was being applied. In fact, it appears the trial court enhanced the sentences on both counts. Because the convictions arose out of the same criminal episode and were entered on the same date, only one of the convictions should have been enhanced under La.R.S. 15:529.1. State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991); State v. Soileau, 95-1214 (La.App. 3 Cir. 5/15/96); 677 So.2d 518; and State v. Guillory, 598 So.2d 1299 (La.App. 3 Cir.1992), appeal after remand, 617 So.2d 151 (La.App. 3 Cir.1993), appeal after remand, 93-1031 (La.App. 3 Cir. 4/27/94); 640 So.2d 427.
Additionally, the record reveals the trial court imposed the two sentences without benefit of parole, probation or suspension of sentence. Although La.R.S. 15:529.1(G) requires that any sentence imposed under that provision be without benefit of probation or suspension, it does not authorize the trial court to impose the sentence without benefit of parole. Moreover, the provision under which the trial court stated he was sentencing the Defendant, La.R.S. 15:529.1(A)(1)(b)(i), does not authorize the trial court to deny parole eligibility. Finally, neither the substantive penalty provision for aggravated battery nor second degree battery authorizes the trial court to impose the sentences without parole eligibility. Thus, the trial court erred in denying parole eligibility.[2]
Thus we vacate the sentences on the jury convictions and the adjudications and sentences of the Defendant under the habitual offender statute are set aside, and the case is remanded to the district court for resentencing on both convictions, with adjudication and sentencing as a habitual offender on only one of the convictions. See Porter, 573 So.2d 1106 and Guillory, 598 So.2d 1299.

ASSIGNMENTS OF ERROR NUMBERS 1 & 2:
By these assignments of error, the Defendant claims the record is void of sufficient evidence to support his convictions. More specifically, the Defendant complains that the jury failed to exclude every reasonable hypothesis of innocence that he committed aggravated battery because the State failed to present any evidence to identify the Defendant as the aggressor or to rebut his claim of self defense.

*304 Aggravated Battery
The Defendant was convicted of the aggravated battery of Rufus Searile. Aggravated battery is defined in La.R.S. 14:34 as the intentional use of force or violence upon the person of another, committed with a dangerous weapon. However, as the Defendant claims, the use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person provided that the force or violence used is reasonable and apparently necessary to prevent the offense. La.R.S. 14:19.[3] Thus, once the elements of the offense are identified, the inquiry shifts to whether the force or violence used was justifiable.
The Defendant alleges that the injury sustained by Searile could have easily happened as a result of Searile attacking the Defendant who was holding a pair of scissors in furtherance of his laundry responsibilities. The Defendant contends that it is not clear whether Searile was holding the scissors, and that during the struggle, the Defendant pulled or fought them out of the hands of Searile. Lastly, the Defendant argues that the State failed to establish that the alleged attack on the person of Searile was made without his consent because Searile invoked his fifth amendment right against self incrimination and did not testify as to his consent.
At trial, Sergeant Pickney testified that he was working as a laundry security officer on April 13, 1998 when his attention was called to a scuffle going on between the Defendant and Rufus Searile. Sergeant Pickney ran to the men, who were on the floor fighting, and noticed blood and a pair of scissors in the hand of the Defendant. The Defendant was trying to stab Searile with the scissors while another inmate, Brian Broussard, was attempting to restrain the Defendant. Broussard testified that he attempted to break up the fight, explaining that he grabbed the Defendant, who was on top of Searile, and tried to drag him off of Searile. Sergeant Pickney explained that Searile was trying to get away, working himself from underneath the Defendant's legs. Broussard testified that Pickney pulled Searile out of the way while he was still restraining the Defendant. Broussard stated that he did not know the Defendant was armed with a pair of scissors until another inmate, "Snake," disarmed the Defendant.
Both Sergeant Pickney and Broussard testified that they did not see the beginning of the fight. However, Pickney testified that about thirty minutes prior to the scuffle, the Defendant and Searile had had a disagreement about clothes being taken out of a dryer and put on the floor. A photograph of the tee-shirt Searile was wearing when he was stabbed was admitted into evidence and Pickney confirmed that the holes in the shirt corresponded with locations of Searile's stab wounds.
Dr. Guyen Tran examined Searile following the altercation on April 13, 1998, and identified the four stab wounds sustained by Searile in photographs presented at trial. He explained that Searile had three wounds on his back and one in his left subclavicular area, all of which could have been inflicted with a pair of scissors. Dr. Tran did not probe the wounds so he was unable to comment as to their depths. However, he opined that the wound to the left subclavicular area as the most serious of the four because its proximity to the subclavian artery. Searile was kept in the infirmary for close observation for one week before he was released.
When asked if he was stabbed by the Defendant, Searile invoked his fifth amendment right against self-incrimination and maintained this right throughout his questioning.
Although neither Sergeant Pickney nor Broussard witnessed the onset of the fight, the testimony of both witnesses combined with the testimony of Dr. Tran provides *305 evidence which supports the jury's guilty verdict. The record does not support the Defendant's claim that the injury sustained by Searile could have easily happened as a result of Searile attacking the Defendant. The testimony of Pickney and Broussard places the scissors in the hand of the Defendant, not Searile. There is nothing in the record that indicates a possibility that Searile was holding the scissors at any time during the struggle.
Thus we find the first element of aggravated battery, the intentional use of force or violence upon the person of another, is reflected in the record. In addition to intent, the Defendant's use of scissors to stab Searile satisfies the second element, committed with a dangerous weapon. Accordingly, the inquiry shifts to whether the Defendant was justified in using such force or violence for the purpose of self-defense. The Defendant did not testify but now stresses the allegation that Searile was the aggressor and complains that the State failed to present any evidence to rebut the Defendant's claim of self-defense.
The Defendant focuses on the testimony of Major Billy Tigner at the preliminary examination held on November 10, 1998, wherein Tigner testified about information he compiled in an incident report. However, neither Tigner's testimony concerning the content of the report nor the report was presented at trial and, thus, the information contained therein cannot be considered for the purpose of this sufficiency review. At trial, Tigner did testify that he recalled writing the incident report wherein he mentioned that two inmates saw how the fight started. However, Tigner did not testify about the details reported by the two inmates, only that they were cooperative with the investigation. Tigner testified that the identities of these two men were recorded as "confidential informants" on the report and that he neither recorded nor could he remember their names.
In support of his claim of self-defense, the Defendant relies solely upon this report and alleges that no evidence was offered by the State that established that he was not acting in self-defense. In non-homicide cases, the defendant must carry the burden of proving self-defense by a preponderance of the evidence. State v. Anderson, 98-492 (La.App. 3 Cir. 10/28/98); 721 So.2d 1006, writ denied, 98-2976 (La.3/19/99); 739 So.2d 781. Even assuming Searile was the aggressor, for the Defendant to be successful in a self-defense argument, he had to show that the force used was necessary to ward off the attack. La.R.S. 14:19 provides that the force or violence used must be reasonable and apparently necessary to prevent the offense. The first circuit addressed this issue in a similar case, State v. Patton, 479 So.2d 625 (La.App. 1 Cir.1985). In Patton, a fight ensued between the defendant and victim and the victim was ultimately stabbed. The defendant testified that he was attacked by the victim and the victim claimed that the defendant was the aggressor. The court found that "even assuming, as did the trial court, that the defendant disarmed the victim, the defendant became the aggressor and lost the right to claim self-defense when he callously stabbed the victim." Id. at 627.
Likewise, in the instant case, the record reflects that the force or violence employed by the Defendant was not reasonable and exceeded what was justified under the circumstances. First, there is no indication in the record that Searile was armed with a weapon. According to Sergeant Pickney, the scissors used by the Defendant belonged to another inmate not identified in the record. Pickney explained that scissors are issued to inmates working in the laundry room. Additionally, Pickney had no knowledge of any past threats made by Searile to the Defendant. The incident report compiled by Tigner was not submitted into evidence, thus, its contents are not considered for the purpose of this sufficiency review. The testimony describing the positions of the victim and the Defendant when Pickney and Broussard arrived on the scene indicate *306 that the Defendant went beyond self-defense during the altercation. As noted above, Defendant was found on top of Searile, being physically restrained from further stabbing Searile with the scissors. Moreover, three of the stab wounds were to Searile's back, possibly indicating that he was not facing the Defendant when they were inflicted. According to Pickney, the Defendant did not require medical attention as a result of the fight. There was no testimony that established whether or not the Defendant sustained any injuries. Accordingly, we find that the degree of force used by the Defendant was neither reasonable nor necessary to prevent Searile's offensive behavior.
The Defendant also claims that the State has not proven an element of the crime, the lack of the victim's consent to the attack; this argument is misplaced. La.R.S. 14:34 defines aggravated battery as a battery committed with a dangerous weapon. Battery is defined in La.R.S. 14:33 as the intentional use of force or violence upon the person of another. Ten various forms of battery are provided for by statute. Those batteries, set forth in La.R.S. 14:34.1-34.5 and 14:35-35.1, contain the language "without the consent of the victim." However, La.R.S. 14:34 (aggravated battery), La.R.S. 14:34.7 (aggravated second degree battery) and La.R.S. 14:35.2 (simple battery of the infirm) do not add this additional element as part of the crime. Thus, the State was not required to prove that Searile did not consent to the crime of aggravated battery. With regard to his conviction for aggravated battery, we find the Defendant's assignments of error are without merit.

Second Degree Battery
The Defendant was found guilty, by a responsive verdict, of the second degree battery of Sergeant Pickney. The elements required for a conviction of second degree battery are set forth in La.R.S. 14:33 and 14:34.1, which define second degree battery as the intentional use of force or violence upon the person of another without his or her consent and intentionally inflicting serious bodily harm.
The Defendant argues that an individual must have the specific intent to commit second degree battery and claims that the State did not prove that he was trying to stab Pickney. The Defendant also argues that Pickney's injury could have occurred as the result of Defendant's attempts to break free from Brian Broussard as he was possibly afraid of being detained by another inmate who could be assisting the instigator, Searile.
Pickney testified that as he tried to pull Searile out from under the Defendant while Defendant was restrained by Broussard, the Defendant broke away from Broussard's grip and attempted to stab Searile with the scissors, but instead, stabbed Pickney on the arm. Pickney believed that his stabbing was an accident and doubted that the Defendant intended to stab him. However, the fact that he missed Searile and struck Pickney does not relieve the Defendant from criminal responsibility for Pickney's injury. The jury was instructed with regard to transferred intent as follows:
When a person attempts to commit a battery with a dangerous weapon upon another, and accidently commits a battery with a dangerous weapon on a third person, if the battery with a dangerous weapon would have been unlawful against the first person, then it would have been unlawful against the third person, even though it would have been accidental. In other words, if the state has proven beyond a reasonable doubt, that the defendant had the intent to commit a battery with a dangerous weapon upon that person, but accidently committed a battery with a dangerous weapon upon another person, you must transfer that intent from the intended victim to the actual victim.
The Defendant did not object to the court's instruction on transferred intent.
*307 The law of transferred intent was explained by our brethren of the first circuit in State v. Druilhet, 97-1717 (La.App. 1 Cir. 6/29/98); 716 So.2d 422, a case similar to the case sub judice. In Druilhet, the defendant was charged with aggravated battery and, after a trial by jury, was found guilty of the responsive offense of second degree battery. In his claim that the evidence was insufficient to support his conviction, the defendant argued that he lacked the intent necessary for a conviction of second degree battery because he meant to hit his brother and did not mean to hit or cause serious injury to the victim. The court noted that under the theory of transferred intent, if the defendant possessed the necessary intent to inflict serious bodily injury when trying to hit his brother, but missed and accidentally hit someone else instead, such intent is transferred to the actual victim. See also State v. Johnson, 29,629 (La.App. 2 Cir. 8/20/97); 698 So.2d 1051; State v. Jordan, 97-1756 (La. App. 4 Cir. 9/16/98); 719 So.2d 556, writ denied, 98-2595 (La.1/15/99); 736 So.2d 207. Thus, if the Defendant had the specific intent to stab Searile with the scissors, and inadvertently stabbed Pickney, then the Defendant possessed the necessary intent for the conviction of the second degree battery of Pickney.
The record, as set forth above with regard to the conviction of the aggravated battery of Searile, supports the jury's determination that the Defendant intended to stab Searile and did so four times. In his brief, the Defendant contends that Pickney's injury could have resulted from the Defendant's attempts to break free from Broussard who could have been assisting Searile in an assault upon the Defendant. Thus, if the Defendant was not intending to stab Searile, then there would be no transferred intent to the stabbing of Pickney.
Again, the Defendant's intent to stab Searile is established in the record through the testimony of Pickney and Broussard. Pickney testified that when he arrived on the scene, the Defendant "was trying to get at" Searile with the scissors while being restrained by Broussard. He added that the Defendant was "trying to get away to get at Rufus." Pickney was trying to get Searile out of the way so Searile would not get stabbed again. Pickney explained that when he went to pull Searile out of the way, the Defendant broke away from Broussard's grip and attempted to, once again, stab Searile with the scissors but instead, struck him. Broussard testified that when he first observed the fight, the Defendant was on top of Searile with scissors in his hand.[4] Broussard described how he grabbed the Defendant from behind, and Pickney pulled Searile away. Broussard testified that he did not see Pickney get stabbed but thought that Pickney must have been in the middle of the scuffle when the Defendant broke loose. He heard Pickney yell when he was stabbed.
The record also reflects that Pickney's injury was serious. He was first treated in the infirmary where his wound was cleaned. Then, Pickney went to the emergency room at a hospital in Opelousas where he was ultimately admitted for a few days due to an infection. He had to take antibiotics and was seen by his physician on a weekly basis. Pickney missed a month of work. A photograph of Pickney's stab wound to his arm was introduced and admitted into evidence.
We conclude that the record supports the jury's guilty verdict of the second degree battery of Sergeant Pickney.
With regard to both convictions, we find the State excluded every reasonable hypothesis of innocence. Accordingly, for the foregoing reasons, the Defendant's assignments of error are without merit.

*308 DISPOSITION:

The Defendant's convictions are affirmed. The Defendant's sentences on the two jury convictions and the adjudications and sentences under the habitual offender statute are vacated and set aside. The case is remanded to the district court for resentencing on both jury convictions; his adjudication and sentencing as a habitual offender to be on only one of the convictions.
CONVICTIONS AFFIRMED; SENTENCES AND ADJUDICATIONS VACATED AND SET ASIDE; REMANDED WITH INSTRUCTIONS.
WOODARD, J., concurs without reasons.
NOTES
[1] The victim's name is spelled Serille in the transcript. However, on the bill of information and on the prison hospital record, the name is spelled Searile.
[2] It is apparent that the Defendant's parole eligibility is restricted by La.R.S. 15:574.4. However, parole eligibility under that article is to be determined by the Department of Corrections. State ex rel. Tucker v. Ward, 94-1850 (La.9/20/96); 679 So.2d 414.
[3] This article does not apply where the force or violence results in a homicide.
[4] Broussard contradicts himself later in his testimony stating that he did not know that the Defendant had scissors until he saw another inmate, "Snake," take the scissors out of Defendant's hand and notice the blood on Searile.