NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1289

STATE IN THE INTEREST
OF J.R.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. J-32-10
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and J. David Painter, Judges.

**ADJUDICATION AFFIRMED, DISPOSITION AMENDED, AND REMANDED WITH INSTRUCTIONS.**

Annette Fuller Roach
Louisiana Appellate Project
P. O. Box 1747
Lake Charles, LA 70602-1747
Telephone: (337) 436-2900
COUNSEL FOR:
    Defendant/Appellant - J.R. (minor)

Michael Cade Cassidy
District Attorney – 31st Judicial District Court
Stacey C. Naquin
Assistant District Attorney – 31st Judicial District Court
P. O. Box 1388
Jennings, LA 70546
Telephone: (337) 824-1893
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**THIBODEAUX, Chief Judge.**

The trial court adjudicated J.R., a minor, delinquent based upon the commission of an aggravated battery, and ordered him committed to the custody of the Office of Juvenile Justice for a period not to exceed one year. The sentence was suspended, and J.R. was placed on supervised probation for a period not to exceed one year.

J.R. appeals on the basis of insufficiency of the evidence. We affirm.

## LAW AND DISCUSSION

### Insufficiency of the Evidence

J.R. was accused of cutting the arm of M.R. with a box cutter or razor blade while attending class at Elton High School. He contends the evidence introduced at the adjudication hearing was insufficient to prove all of the elements of the offense of aggravated battery.

> In a juvenile proceeding, the state's burden of proof is the same as in a criminal proceeding against an adult-to prove beyond a reasonable doubt every element of the offense alleged in the petition. La. Ch.Code art. 883; *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970. "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) . . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984).

> *State in the interest of D.P.B.*, 02-1742, pp. 4-5 (La.5/20/03), 846 So.2d 753, 756. "[A]ppellate review in juvenile delinquency proceedings extends to both law and facts." *State in the interest of L.T.*, 99-487, p. 6 (La.App. 3 Cir. 10/13/99), 747 So.2d 148, 152.

> In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety

and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the appellate court may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Id.*

> *State in the interest of D.H.*, 04-2105, pp. 7-8 (La.App. 1 Cir. 2/11/05), 906 So.2d 554, 560.

*State ex rel. T.W.*, 09-532, p. 2 (La.App. 3 Cir. 10/7/09), 21 So.3d 465, 467-68.

J.R. was convicted of aggravated battery. An "[a]ggravated battery is a battery committed with a dangerous weapon." La.R.S. 14:34. "Battery is the intentional use of force or violence upon the person of another . . . ." La.R.S. 14:33. "'Dangerous weapon' includes any . . . instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." La.R.S. 14:2(3).

> To convict a defendant of aggravated battery, the prosecution must prove that the defendant intentionally used force or violence upon the victim, that the force or violence was inflicted with a dangerous weapon and that the dangerous weapon was an instrumentality used in a manner likely to cause death or great bodily harm. *State v. Brooks*, 499 So.2d 741 (La.App. 3 Cir. 1986).

*State v. Freeman*, 01-997, p. 3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 581.

M.R. testified that on April 21, 2010, she was sitting down talking to G.F. and another friend in agriculture class when she felt something cut her. She then looked down and saw a cut on the top of her right forearm that was approximately one inch in length. When M.R. looked up, J.R. was "standing on the side of me with a razor blade" that "looked like a box cutter." She then asked

J.R. if he cut her. M.R. did not recall what size or color the box cutter was. In her statement to police, M.R. said she was cut with a razor blade.

M.R. did not see J.R. approach her or cut her. She was asked the following on cross-examination: "it's your testimony that he reached over your shoulder - - he walked up from behind you, reached over your shoulder, and cut you on the - -." M.R. responded, "I'm [sic] guess that's what he did. Yes, sir, he was behind me when he cut me."

M.R. testified that J.R. did not say anything to her when she looked up at him. She subsequently testified that shortly after she was cut, J.R. told her not to tell anyone or he would make the rest of her year miserable. After J.R. cut her, he spoke to G.F.. M.R. testified she did not recall what J.R. said to him. She later testified that J.R. told G.F. that if G.F. said anything, he would cut G.F.'s throat.

M.R. testified that after she was cut, she and G.F. asked the teacher if she could go to the restroom to clean the cut. M.R. did not tell the teacher that J.R. threatened her. However, she showed the teacher the cut and said she accidentally cut herself with a pencil. M.R. testified that she told her teacher she cut herself because she was scared of J.R..

One of M.R.'s friends told M.R.'s parents about the cut. When she got home that day, they asked her about it. Her parents then spoke to police.

G.F. testified that during sixth hour he sat at the same table as M.R.. M.R. and J.R. were involved in a "misconception" or a fight. While G.F. and M.R. were talking back and forth, J.R. cut M.R.'s arm, and she said, "ow, you just cut me." J.R. leaned back in his chair when he cut M.R.'s forearm with a box blade. G.F. was further questioned as follows:

Q    Did you see [the Juvenile] holding the box blade?

A    I didn't see him hold it. All I saw was him slice with it.
     That was about it.

Q     But you saw it in his hand whenever the cut was happening?

A     Yes, ma'am.  It was real quick.

G.F. further testified that M.R. would have seen J.R. cut her.

T.L. and J.P. both testified that neither saw M.R. cut nor threaten M.R..  They also were in the same agriculture class.

Sergeant Donald Miguel LaFleur testified that he took photographs of M.R.'s arm.  He observed a small cut or laceration to her right forearm, which he did not consider to be a serious injury.  Sergeant LaFleur was asked if there was any doubt in his mind that J.R. cut M.R. with a box blade, and he indicated there was not.  Sergeant LaFleur further testified that M.R. told him J.R. grabbed G.F. by the throat and held a razor to his throat.

The trial court heard the testimony and took the matter under advisement.  The following day, the trial court found that J.R. committed an aggravated battery upon M.R..  The trial court stated that G.F., M.R., J.P., and T.L. were credible.  The trial court further stated:

> However, the defendant's position that they urged in that [the Juvenile] did not have a knife - - not a knife, a razor blade, what they referred to as a box cutter, in that they did – the two (2) girls, [T.L.] and [J.P.], did not see one. So his position was that because they did not see one, therefore, he did not cut [M.R.] on the day in question. However, for the Court to accept his - - the defendant's position, the Court would have to find that [G.F.], who actually saw [the Juvenile] cut [M.R.] with the box cutter to be untruthful and making the story up.  Further, the Court would also have to find that the victim - - the alleged victim who did not see him cut her but felt her arm cut but saw him with the box cutter in his hand would also be lying.  This position the Court cannot find to be a reasonable hypotheses.  The Court finds that - - when I said that [T.L.] and [J.P.] was [sic] credible, they may not have seen the box cutter; that does not mean that a box cutter was not there.  And, therefore, the Court is going to adjudicate the minor a delinquent based on the commission of the offense alleged.

J.R. asserts there is insufficient evidence to prove beyond a reasonable doubt that he cut M.R. with a dangerous weapon. He contends two witnesses, J.P. and T.L., testified that it did not happen. The testimony of the two witnesses who testified that the events did occur, M.R. and G.F, differ on what took place. J.R. points out inconsistencies in the testimony of M.R. and G.F..

J.R. contends the trial court's conclusion that J.P. and T.L. may not have seen the altercation was not plausible. Further, J.P. was adamant there was insufficient time for J.R. to have done what G.F. alleged. Accordingly, J.R. avers this court must resolve the inherent conflict between the testimony of J.P. and G.F..

J.R. further contends that even if this court concludes he touched M.R., the State did not prove he had the intent to batter M.R. without her consent.[1]

The trial court found that J.R. cut M.R. with a box cutter despite testimony from J.R., J.P., and T.L. that he did not do so. There are two permissible views of the evidence in this case, and the testimony of M.R. and G.F. was not so internally inconsistent that a reasonable fact finder would not credit their stories. Accordingly, we find that the trial court's choice between the two views of the evidence was not manifestly erroneous.

## ERRORS PATENT

Although the Louisiana Children's Code is silent as to whether a juvenile criminal proceeding is entitled to an error patent review, this court has found that such a review is mandated by La.Ch.Code art. 104 and La.Code Crim.P. art. 920. *See State in the Interest of J.C.G.*, 97-1044 (La.App. 3 Cir. 2/4/98), 706 So.2d 1081. After reviewing the record, there are three errors patent requiring discussion.

---

[1] In *State v. Wright*, 99-1137, p. 9 (La.App. 3 Cir. 3/1/00), 758 So.2d 301, 306, *writ denied*, 00-1614 (La. 3/9/01), 786 So.2d 118, this court found that consent was not an element of aggravated battery.

First, we note the adjudication hearing was not timely held in this case. Louisiana Children's Code Article 877 requires that the adjudication hearing commence within ninety days of the appearance to answer the petition if the child is not continued in custody.[2] The court may extend this period for good cause.

The adjudication proceeding in this case was scheduled beyond the ninety-day period at the request of J.R. This was good cause for an extension of the time period.

Second, we note the trial court failed to give J.R. credit for predisposition time spent in secure detention. Louisiana Children's Code Article 898(A) states, "[t]he court shall give a child credit for time spent in secure detention prior to the imposition of disposition." Accordingly, J.R.'s disposition should be amended to reflect he is given credit, if any is available to him, for time spent in secure detention prior to the imposition of disposition. We remand with instructions that the trial court note the amendment in the court minutes. *See State in the Interest of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012.

Third, there is no indication in the record that the trial court informed J.R. of the two-year prescriptive period for filing an application for post-conviction relief. In *State in the Interest of J.F.*, 03-321, p. 8 (La.App. 3 Cir. 8/6/03), 851 So.2d 1282, 1287, this court stated:

> The trial court failed to inform J. F. of the two-year prescriptive period for filing for post-conviction relief as required by La.Code Crim.P. art. 930.8. Although the Children's Code contains no similar provision, this court has previously held that this notice should be given. *State in the Interest of J.C.G.*, 97-1044 (La.App. 3 Cir. 2/4/98), 706 So.2d 1081. Therefore, we must remand this matter to the trial court for compliance with this requirement.

---

[2]There is no indication in the record that J.R. was continued in custody. The court order refixing the adjudication hearing for December 16, 2010 indicated that J.R. was to be served at his home address.

Accordingly, this court orders the trial court to inform J.R. of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of the opinion and to file written proof in the record that J.R. received the notice.

## CONCLUSION

J.R.'s adjudication of delinquency is affirmed. However, his disposition is amended to reflect he is given credit, if any is available to him, for time spent in secure detention prior to the imposition of disposition. We remand with instructions that the trial court note the amendment in the court minutes. Additionally, the trial court is ordered to inform J.R. of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to J.R. within ten days of the rendition of the opinion and to file written proof in the record that J.R. received the notice.

**ADJUDICATION AFFIRMED, DISPOSITION AMENDED, AND REMANDED WITH INSTRUCTIONS.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.